ROBERT WISNIEWSKI P.C.
17 State Street, Suite 820
New York, New York 10004
(212) 267-2101
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

AUGUSTO DE ALMEIDA PALMEIRA,                    :

                         Plaintiff,             :

         -against-                              :

QATAR AIRWAYS Q.C.S.C.                                   **Docket No.:**

                                                :       **JURY TRIAL DEMANDED**

                         Defendant.             :

------------------------------------------------------------X

## COMPLAINT

Plaintiff Augusto De Almeida Palmeira ("Palmeira" or "Plaintiff"), by and through his attorneys, Robert Wisniewski P.C., as and for his Complaint against Defendant Qatar Airways Q.C.S.C. (the "Corporate Defendant"), state as follows:

## NATURE OF THE ACTION

1.      Plaintiff Palmeira was employed by the Corporate Defendant, located at 350 5th Avenue in Manhattan, as an Airport Service Duty Officer (Duty Operations Manager) and stationed at JFK Airport.

2.      Palmeira was discriminated against in the terms and conditions of his employment by the Corporate Defendant. In addition, Palmeira was terminated in retaliation for having lodged a complaint of discrimination against employees of the Corporate Defendant.

3.      Palmeira brings this action against the Corporate Defendant for discrimination and hostile work environment based on race, color, national origin, sex and retaliation including but

not limited to, termination of Palmeira's employment for his opposition to, and complaint of, said discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

4.      Palmeira also asserts claims against the Corporate Defendant under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 for discrimination and retaliation based on age, including but not limited to, termination of Palmeira's employment despite a younger employee violating the same company policy and receiving only a written warning.

5.      Palmeira also asserts claims against the Corporate Defendant under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), for race and national origin discrimination and retaliatory discrimination.

6.      Palmeira also asserts claims against the Corporate Defendant under the New York Executive Law § 296 ("NYSHRL") and the New York City Charter and Administrative Code § 8-107 ("NYCHRL") for discrimination and hostile work environment based on age, race, skin color, national origin, sex and retaliation, including but not limited to, termination of Palmeira's employment for his opposition to and complaint of said discrimination and hostile work environment.

7.      Palmeira finally asserts claims against the Corporate Defendant for violation of the New York Labor Law §740 ("NYLL"), for unlawful discharging, including but not limited to, termination of Palmeira's employment for his opposition to and complaint of discriminatory policies or practices of the Corporate Defendant that created and presented a substantial and specific danger to public safety.

**PARTIES, JURISDICTION, AND VENUE**

8.      Palmeira, a former employee of the Corporate Defendant, is a 61-year-old Brazilian-American white, non-Muslim male who resides in the State of New York, Queens County.

9.      Palmeira worked for the Corporate Defendant from February 2, 2022 through August 29, 2022.

10.     At all relevant times, the Corporate Defendant is and has been a foreign business corporation duly organized under, and existing by virtue of, the laws of Qatar and is authorized to do business in the State of New York.

11.     At all relevant times, the Corporate Defendant employed five hundred (500) or more employees, and thus, was Palmeira's "employer" within the meaning of that term in the Title VII, Section 1981, ADEA, NYSHRL, NYCHRL, and NYLL.

12.     This Court has personal jurisdiction over the Corporate Defendant pursuant to CPLR 302(a), New York's long arm statute.

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under Section 1981, Title VII, ADEA, and 28 U.S.C. §1337 (Regulation of Commerce). This Court has supplemental jurisdiction over Palmeira's state law claims pursuant to 28 U.S.C. §1367, because those claims are intimately related to Palmeira's federal claims and form part of the same case or controversy.

14.     This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. §1391(b), because substantial events relating to the claims herein occurred in this district.

**PREREQUISITES**

15.     Palmeira has filed charges of discrimination against the Corporate Defendant with

the Equal Employment Opportunity Commission ("EEOC") and has received a Notice of the Right to Sue (the "Right to Sue Letter").

## **TRIAL BY JURY**

16.     Palmeira demands a trial by jury of all issues so triable in this action.

## **FACTUAL BACKGROUND**

### *Discrimination of Palmeira by the Corporate Defendant*

17.     The Corporate Defendant is doing business as Qatar Airways and is described as a "multiple award-winning airline" and "synonymous with excellence," is a government-owned international flag carrier that currently flies to more than 170 destinations worldwide, including New York. *See*   https://www.qatarairways.com/press-releases/en-WW/about/   (last accessed January 30, 2024).

18.     Prior to Palmeira being hired by the Corporate Defendant, he had over twenty-five (25) years of progressive experience in airport operations. Prior to his employment with the Corporate Defendant, Palmeira worked for Delta Airlines, XL Airways France, and Swiss International Airlines.

19.     Palmeira had started working for the Corporate Defendant on or about February 2, 2022 as an Airport Service Duty Officer (Duty Operations Manager) and stationed at JFK Airport. Based on his vast experience, Palmeira was qualified for his position at the Corporate Defendant.

20.     Palmeira is white of Brazilian provenance. His religion is Catholic.

21.     As an Airport Service Duty Officer stationed at JFK Airport, Palmeira had managerial authority over approximately thirty (30) employees, all of whom were Muslim.

22.     Palmeira reported directly to the Corporate Defendant's Station Manager, Takia Belarbi ("Belarbi") who is Algerian by provenance and Muslim by religion.

23.     One of Palmeira's subordinates was Hania Qayyum, a Muslim woman of Pakistani origin in her early thirties. At all relevant times, Qayyum was employed by the Corporate Defendant as a ticketing agent and, upon Palmeira's joining the Corporate Defendant, she reported directly to him.

24.     On a daily basis, Palmeira was in constant contact with Ms. Qayyum throughout his shift.

25.     From the beginning of Palmeira's employment with Qatar, Qayyum was openly disrespectful and hostile to him on a daily basis, very often in front of other employees. Ms. Qayyum almost always refused to take direct instruction from Palmeira or to follow his direction, even though Palmeira had very substantial experience in airport operations, which she did not.

26.     So as to highlight her total lack of respect and show insubordination, Ms. Qayyum did not attend the mandatory briefings that Palmeira had with his subordinates.

27.     Throughout the course of Palmeira's employment with Qatar, Ms. Qayyum would speak to his subordinates in Urdu or Punjabi in his presence, despite company policy dictating that its employees only speak English to each other during work hours. Moreover, Palmeira observed that very often after openly defying him, Ms. Quayyum would make comments in Urdu or Punjabi which often raised waves of laughter amongst her co-workers. Palmeira understood that Ms. Qayyum was ridiculing or speaking ill of him in the language that he could not understand.

28.     Moreover, in or about late April of 2022, Palmeira learned from one of the male Muslim workers of the Corporate Defendant that Ms. Qayyum was referring to him as an "infidel" when she was referring to him in conversations with co-workers or

making comments in Urdu or Punjabi in his presence after openly defying him. "Infidel" is a derogatory term used to refer to someone that does not adhere to a religion other than one's own and this is precisely how Ms. Qayyum used the term in a derogatory manner.

29. Over the course of his employment and prior to July of 2022, Palmeira complained at least on five occasions to Station Manager, Belarbi, about Qayyum's harassment and open hostility towards him. But Belarbi took no action against Qayyum. In fact, Belarbi would always state to Palmeira that she herself would deal with his complaint and directed Palmeira not to talk to Qayyum about the complained of issues.

30. On or about March 26, 2022, Palmeira was in charge of operations for flight QR702/26Mar, which was from JFK Airport to Hamad International Airport in Doha, Qatar, while Qayyum, a ticketing agent of the Corporate Defendant, was in charge of check- ins and closing out the flight at the gate for flight QR702/26Mar.

31. Despite Qayyum's responsibility to go to the gate and close out the flight, she instead decided to abandon her duties and stay at the office of the Corporate Defendant. Due to Qayyum's abandoning her responsibilities, an incident occurred whereby one passenger's luggage was loaded to the aircraft despite the passenger not having boarded the flight.

32. When such an incident occurs, the standard procedure is for the aircraft to return to the gate of the takeoff location to load off the luggage.

33. Qayyum knew that the passenger's luggage was loaded despite the passenger's not having been boarded, yet she did not call Palmeira to rectify this serious safety and security breach.

34. Palmeira immediately notified Takia Belarbi, the Station Manager and Palmeira's direct report, of the incident and Qayyum's negligent behavior. Instead of disciplining Qayyum, Belarbi prepared a report in which she blamed the baggage room agent and Palmeira.

35. April 2, 2022 to May 1, 2022 was Ramadan -- the holiest month of the year in the Islamic culture. This month is observed by Muslims around the world as a month of fasting, prayer, reflections, community, and charities.

36. During this month, many of Palmeira's subordinates, including Qayyum, became curious of his background. Palmeira informed his subordinates that he was 60-years-old and his family on his father's side is Jewish while his family on his mother's side is Catholic. It was after this that Qayyum's hostility towards Palmeira became even more pronounced than before.

37. Sometime in April 2022 after Palmeira had informed his subordinates of his background and his age, Qayyum told Palmeira in a condescending manner that he was old despite not looking like a 60-year-old man.

38. Palmeira was also responsible for communicating with the Operations Department in Doha, Qatar, and other stations in regards to ticketing requirements or other issues. A specific phone was required to call the Operations Department at these stations.

39. Palmeira, however, had issues contacting the Operations Department in Doha, Qatar and other stations during his employment because Qayyum would always take the phone with her home and refuse to hand it over to Palmeira when he was on duty.

40. In early April 2022, Palmeira informed Qayyum of her misconduct regarding her handling of the operations phone and to return the phone to him when her shift was

over. Qayyum, however, refused to follow Palmeira's instructions.

41. As a result of Qayyum's refusal to surrender the special phone, whenever Palmeira needed to use the phone to contact the Operations Department in Doha or other stations, he had to go drop what he was doing to locate his subordinate, Qayyum, to use the phone or to use the special phone at a remote location.

42. Palmeira reported Qayyum's constant misconduct and the phone issues to Belarbi, but Belarbi took no action. Similarly, Palmeira's reports and complaints about Qayyum's behavior to senior management, such as the Director of Americas, fell on deaf ears.

43. On or about July 23, 2022, Palmeira was in charge of operations for two flights because flight QR701/23JUL was landing late. As such, there was an agreed upon plan with the Corporate Defendant's staff at JFK Airport, which included briefing sheet duties for each employee and the rebooking of passengers.

44. Qayyum was in charge of ticketing at the arrival hall of the airport. A ticketing laptop was required to complete this task. Palmeira asked Qayyum several times that she needs to go to the arrival hall with her ticketing laptop to assist with customers. Qayyum, however, repeatedly ignored Palmeira's requests so Palmeira was forced to ask his supervisor, Belarbi, to tell Qayyum to assist with the ticketing operations.

45. The following day, Palmeira and Qayyum were at Palmeira's office to discuss her refusal to follow his instructions the previous day.

46. Instead of having the courtesy to hold a productive meeting with Palmeira, Qayyum replied that her lack of cooperation was none of Palmeira's business and that she was too busy to hold a meeting. Despite being in charge of ticketing and customer service, Qayyum also stated to Palmeira that he needed to make reservations himself. Qayyum

further told Palmeira that she did not have to attend any briefing and got up from her seat and began to leave Palmeira's office.

47. Palmeira then informed Qayyum that due to her insubordination and unprofessional conduct, she needed to go home for the day. Qayyum, however, replied that he did not have that authority over her and refused to comply with Palmeira's directive.

48. Palmeira was understandably upset and proceeded to walk out of his office and closed the door behind him, leaving Qayyum in his office. Palmeira wanted to "cool off" as he did not want to act inappropriately towards a subordinate.

49. Afterwards, Palmeira called Belarbi to inform him of this incident. Belarbi requested that Palmeira make a report of the incident with Qayyum with supporting evidence, which he did.

50. In response, Qayyum lodged a false complaint against Palmeira to the Human Resources Department of the Corporate Defendant, accusing Palmeira of raising his voice and wagging his finger at her and "slamming" the door when he was leaving his office.

51. Qayyum was not the only Muslim subordinate who harassed Palmeira and was hostile to him. Daniel Phillips ("Phillips"), a mechanical engineer and part of the maintenance team for the Corporate Defendant, was another who was hostile and openly aggressive towards Palmeira since the beginning of Palmeira's employment with the Corporate Defendant.

52. Phillips, despite his English name, is a Muslim man of Pakistani origin.

53. Sometime in late April or early May of 2022, Phillips had told Palmeira that he did not respect Palmeira's authority because Palmeira was too old for his position and a

"fucking Christian" and he should not be working for the Corporate Defendant.

54. Throughout the course of Palmeira's employment with the Corporate Defendant, Phillips would always make degrading and disrespectful comments towards Palmeira, including referring to Palmeira as a "fucking Christian" on several occasions. Phillips's hostility towards Palmeira increased as time went on.

55. Phillips kept telling Palmeira that Palmeira was the "worst duty manager" he's ever worked with and that he was too old to be working in that position. Moreover, on multiple occasions, Mr. Phillips would try to sabotage Palmeira's work duties and reputation.

56. On or about August 8, 2022, a ramp vehicle at Terminal Four of JFK Airport drove in front of an aircraft, flight QR705, which compromised the safety of airport operations. This incident was reported by Palmeira to senior management.

57. Despite Palmeira's having followed the correct procedures according to FAA regulations and Qatar regulations, Mr. Phillips sent a message to every employee involved in the operations of flight QR705 that Palmeira needed to familiarize himself with "QR procedures."

58. Palmeira reported this incident to Craig Bowles ("Bowles"), then a Station Maintenance Manager for the Corporate Defendant. Bowles confirmed to Palmeira that he correctly followed standard procedure and apologized to Palmeira for Mr. Phillips' behavior. Bowles informed Palmeira and other workers to segregate themselves from Mr. Phillips as much as possible.

59. On or about August 23, 2022, Palmeira had hired cleaners to clean one of the airplanes at JFK Airport before it was ready for takeoff.

60. Phillips falsely informed employees involved in operations and maintenance that Palmeira had "delayed" the preparation of the airplane's flight even though maintenance employees were already informed beforehand of plans for cleaners to go on board to clean the airplane that day. Palmeira reported Phillips' behavior to his supervisor and senior management, such as the Director of Americas, but nothing was done to alleviate his situation.

61. After Qayyum's complaint to the HR department in response to Palmeira's complaint to Belarbi against her, the Corporate Defendant conducted a tendentious investigation designed at exculpating her and inculpating Palmeira.

62. During the course of the investigation, Palmeira wanted to discuss with the HR Manager the numerous issues of harassment and insubordination by Qayyum and harassment by Phillips which he had previously reported to his report, Belarbi, and other high level managers. The HR Manager, however, dismissed these incidents as merely a "generational conflict" and refused to address them substantively.

63. The Corporate Defendant ultimately concluded that Palmeira "slammed" the door when leaving, and that it was a terminable offense. Palmeira was terminated from his position on August 29, 2022. This was despite Palmeira consistently receiving good review performances and passing all of the operations trainings conducted by the Corporate Defendant.

64. Furthermore, the Corporate Defendant concluded in its investigation that both Palmeira and Qayyum had breached the same company rules. Yet despite this finding, Ms. Qayyum was only given a written warning (and later promoted) while Palmeira was subsequently fired from his position.

65. At all times relevant hereto, and during Palmeira's employment with the Corporate Defendant, Qayyum and Phillips engaged in a continuous course of conduct directed at Palmeira that was imbued with an ingrained prejudice against older white, non-Muslim people, was vile and demeaning to Palmeira and was out of bounds of acceptable behavior. Ms. Qayyum and Mr. Phillips' behavior have been sufficiently severe, and occurred in a regular and pervasive manner, that it had a detrimental effect on, and interfered with, Palmeira's health and well-being and the terms of his employment.

66. Palmeira was subjected to disparate treatment or was treated less well than younger non-white, Muslim employees of the Corporate Defendant because he was an older white, non-Muslim man.

67. No reasonable person could tolerate such treatment or conditions of employment.

68. Palmeira was qualified for his position he held and performed his duties in an exemplary manner.

69. The Corporate Defendant was aware of Qayyum and Phillips' prejudice towards white people and non-Muslims, as Palmeira reported numerous incidents of harassment, hostility and discrimination by Qayyum and Phillips to his direct report, Belarbi, and senior management of the Corporate Defendant. Being aware of the discriminatory conduct towards Palmeira, the Corporate Defendant failed to take any measures to protect Palmeira from discrimination and harassment by the other employees.

70. In taking, or failing to take, the actions described, the Corporate Defendant acted with malice, reckless and callous indifference to federal, state, and local anti-discrimination laws, which it knew, or should have known of, and, through its course of conduct,

caused Palmeira to suffer emotional injuries.

71. The Corporate Defendant discriminated against Palmeira on the basis of his gender, race, color, national origin and age, by creating a hostile work environment, and directly discriminating against him.

72. The Corporate Defendant used Qayyum's bogus complaint against Palmeira as a pretext to terminate Palmeira's employment in retaliation for his complaints against Qayyum and Phillips as well as for complaining about substantial breaches of safety that affected the safety of the public.

73. As a result of the Corporate Defendant's unlawful discriminatory acts against Palmeira, Palmeira has suffered, and will likely continue to suffer, significant economic consequences, including lost back and front wages, loss of self-esteem, as well as physical sickness and/or emotional distress.

74. As a result of the Corporate Defendant's unlawful discriminatory acts against Palmeira, Palmeira has suffered and continue to suffer impairment and damage to Palmeira's good name and reputation.

75. As a result of the Corporate Defendant's unlawful discriminatory acts against Palmeira, Palmeira has suffered and continue to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

76. The Corporate Defendant's unlawful discriminatory and harassing acts against Palmeira were intentional and in violation of Title VII, Section 1981, ADEA, NYSHRL, NYCHRL.

77. The Corporate Defendant's termination of Plaintiff was in violation of the NYLL.

**FIRST CLAIM FOR RELIEF**
**Discrimination And Hostile Work Environment Under**
**Title VII Against the Corporate Defendant**

78. Palmeira repeats and realleges each and every allegation previously set forth.

79. When employed by the Corporate Defendant, Palmeira was an employee within the meaning of Section 2000e(f) of Title VII.

80. The Corporate Defendant was an employer within the meaning of Section 2000(e)(b) of Title VII.

81. Section 2000e-2(a) of Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... race, color [or] national origin"

82. The Corporate Defendant through its respective owners, directors, officers, Managers and employees, engaged in discrimination on the basis of sex, race, color and/or national origin sufficient to alter the terms and conditions of Palmeira's employment.

83. The Corporate Defendant discriminated against Palmeira by treating him differently and less favorably than its non-white, Muslim employees based on Palmeira's sex, race, light skin color, and national origin by subjecting him, among other things, to a hostile work environment, disparate working conditions, and discriminatory termination of the employment solely because of his sex, race, color and/or national origin in violation of Section 2000e-2(a) of Title VII.

84. The Corporate Defendant also unlawfully discriminated against Palmeira on the basis of his race, color, and/or national origin by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

85. By virtue of the acts complained of herein, the hostile work environment at JFK Airport was sufficiently severe and pervasive to alter the terms and conditions of Palmeira's employment and create a subjectively and objectively abusive/discriminatory work environment.

86. The Corporate Defendant is liable for the discrimination and hostile work environment against Palmeira because it was created and fostered by its owners, directors, officers, managers, and/or because the Corporate Defendant did not take adequate steps to prevent or address instances of said discrimination and hostile work environment.

87. As a direct and proximate result of the discrimination and hostile work environment complained of herein, Palmeira suffered and continue to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering and interest thereon.

88. Palmeira is also entitled to an award of punitive damages, attorney's fees, and costs because the Corporate Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Title VII.

## SECOND CLAIM FOR RELIEF
### Discrimination And Hostile Work Environment Under
### Section 1981 Against the Corporate Defendant

89. Palmeira repeats and realleges each and every allegation previously set forth.

90. Section 1981 of the Civil rights Act of 1866, provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts … as is enjoyed by white citizens …" This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, and has been interpreted to prohibit race discrimination in hiring and employment.

91. The Corporate Defendant discriminated against Palmeira by treating him differently and less favorably than their non-white, Muslim employees based on his white ethnicity and light skin color by subjecting him, among other things, to disparate working conditions and discriminatory termination of his employment solely because of his race and/or ethnicity in violation of Section 1981.

92. The Corporate Defendant discriminated against Palmeira by treating him differently and less favorably than its non-white, Muslim employees based on Palmeira's race, light skin color and national origin by subjecting him, among other things, to a hostile work environment, disparate working conditions, and discriminatory termination of the employment solely because of his race, color and/or national origin in violation of Section 1981.

93. Said discrimination was sufficiently severe to alter the terms and conditions Palmeira's employment.

94. This discrimination was a result of intentional actions by the Corporate Defendant and deliberate indifference by the Corporate Defendant.

95. The Corporate Defendant liable for the discrimination against Palmeira because it was created and fostered by their owners, directors, officers, managers, and/or agents and/or because all Defendants did not take adequate steps to prevent or address instances of race and/or color discrimination.

96. As a direct and proximate result of the discrimination and hostile work environment complained of herein, Palmeira suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering and interest thereon.

97. Palmeira is also entitled to an award of punitive damages, attorney's fees, and costs because Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981.

### THIRD CLAIM FOR RELIEF
**Retaliation Under Title VII Against the Corporate Defendant**

98. Palmeira repeats and realleges each and every allegation previously set forth.

99. The Corporate Defendant retaliated against Palmeira by, inter alia, (i) subjecting Palmeira to materially adverse actions that would deter a reasonable employee from engaging in protected activity for his opposition to, and complaint against, the Corporate Defendant's discriminatory practices; (ii) failing to stop and prevent the discriminatory conduct towards Palmeira by employees of the Corporate Defendant; and (iii) conducting a bogus investigation and terminating Palmeira's employment after he made his protected complaints to the HR. Such retaliation was inflicted subsequent to, and in direct connection with, Palmeira's complaint of sex, race, color and/or national origin discrimination.

100. As a direct and proximate result of Corporate Defendant's retaliatory conduct, Palmeira suffered and continue to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering and interest thereon.

101. Palmeira is also entitled to an award of punitive damages, attorney's fees, and costs because Corporate Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of Title VII.

### FOURTH CLAIM FOR RELIEF
**Retaliation Under Section 1981 Against the Corporate Defendant**

102. Palmeira repeats and realleges each and every allegation previously set forth.

103.   The Corporate Defendant retaliated against Palmeira by, inter alia, (i) subjecting Plaintiffs to materially adverse actions that would deter a reasonable employee from engaging in protected activity for his opposition to, and complaint against, the Corporate Defendant's discriminatory practices; (ii) failing to stop and prevent the discriminatory conduct towards Palmeira by employees of the Corporate Defendant; and (iii) conducting a bogus investigation and terminating Palmeira's employment after he made his protected complaints to the HR. Such retaliation was inflicted subsequent to, and in direct connection with, Palmeira's complaint of sex, race, color and/or national origin discrimination.

104.   As a direct and proximate result of Corporate Defendant's retaliatory conduct, Palmeira suffered and continue to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering and interest thereon.

105.   Palmeira is also entitled to an award of punitive damages, attorney's fees, and costs because Corporate Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of Section 1981.

### FIFTH CLAIM FOR RELIEF
**Discrimination and Retaliation Under the ADEA Against the Corporate Defendant**

106.   Palmeira repeats and realleges each and every allegation previously set forth.

107.   ADEA § 623(a) provides that, "It shall be unlawful for an employer…to discharge any individual [who is over the age of 40]…because of such individual's age…"

108.   The Corporate Defendant discriminated against Palmeira by treating him differently and less favorably than its younger employees based on his age by subjecting him, among other things, to discriminatory termination of his employment because of his age.

109.  As a direct and proximate result of the Corporate Defendant's discrimination, Palmeira suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering and interest thereon.

110.  Palmeira is also entitled to an award of liquidated damages, attorney's fees, and costs because the Corporate Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the ADEA.

**SIXTH CLAIM FOR RELIEF**
**Discrimination and Hostile Work Environment Under**
**the New York State Human Rights Law Against the Corporate Defendant**

111.  Palmeira repeats and realleges each and every allegation previously set forth.

112.  NYSHRL § 296(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer ..., because of an individual's age sex, race, color, [or] national origin ... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

113.  The Corporate Defendant discriminated against Palmeira by treating him differently and less favorably than its non-white, Muslim employees based on his age, sex, white race and skin color and his national origin by subjecting him, among other things, to disparate working conditions, discriminatory disciplinary procedures, and discriminatory termination of his employment solely because of his sex, race, color, and/or national origin in violation of Section 296(1) of NYSHRL.

114.  The Corporate Defendant also unlawfully discriminated against Palmeira on the basis of his sex, race, color, and/or national origin by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

115.   By virtue of the acts complained of herein, the discrimination and hostile work environment at JFK Airport was sufficiently severe and pervasive to alter the terms and conditions of Palmeira's employment and create a subjectively and objectively abusive/discriminatory work environment.

116.   Said discrimination and hostile work environment occurred with malice and reckless disregard of Palmeira's rights.

117.   Section 296(6) provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

118.   The Corporate Defendant engaged in unlawful discriminatory practices in violation of the NYSHRL § 296 (6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

119.   As a direct and proximate result of the Corporate Defendant's discrimination and hostile work environment, Palmeira suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering.

120.   Palmeira is also entitled to an award of punitive damages, attorney's fees, and costs because the Corporate Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 296 of the NYSHRL.

**SEVENTH CLAIM FOR RELIEF**
**Discrimination and Hostile Work Environment Under**
**the New York City Human Rights Law Against the Corporate Defendant**

121.   Palmeira repeats and realleges each and every allegation previously set forth.

122.   The New York Administrative Code § 8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof,

because of the actual or perceived age, sex, race, color, [or] national origin... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

123. The Corporate Defendant discriminated against Palmeira by treating him differently and less favorably than its non-white, Muslim employees based on his sex, race and skin color and national origin by subjecting them, among other things, to disparate working conditions, discriminatory disciplinary procedures, and discriminatory termination of his employment solely because of his age, sex, race, color, and/or national origin in violation of New York Administrative Code § 8-107(1).

124. The Corporate Defendant also unlawfully discriminated against Palmeira on the basis of his sex, race, color, and/or national origin by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

125. By virtue of the acts complained of herein, the discrimination and hostile work environment at JFK Airport was sufficiently severe and pervasive to alter the terms and conditions of Palmeira's employment and create a subjectively and objectively abusive/discriminatory work environment.

126. Said discrimination and hostile work environment occurred with malice and reckless disregard of Palmeira's rights.

127. The New York Administrative Code § 8-107(6) provides that, "It shall be an unlawful discriminatory practice: For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

128.    The Corporate Defendant engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

129.    As a direct and proximate result of the Corporate Defendant's discrimination and hostile work environment, Palmeira suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering.

130.    Palmeira is also entitled to an award of punitive damages, attorney's fees, and costs because the Corporate Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 8-107.

**EIGTH CLAIM FOR RELIEF**
**Retaliation Under the New York Human Rights Law Against the Corporate Defendant**

131.    Palmeira repeats and realleges each and every allegation previously set forth.

132.    The Corporate Defendant retaliated against Palmeira by, inter alia, (i) subjecting Palmeira to materially adverse actions that would deter a reasonable employee from engaging in protected activity for his opposition to, and complaint against, the Corporate Defendant's discriminatory practices; (ii) failing to stop and prevent the discriminatory conduct towards Palmeira by employees of the Corporate Defendant; and (iii) conducting a bogus investigation and terminating Palmeira's employment after he made his protected complaints to the HR. Such retaliation was inflicted subsequent to, and in direct connection with, Palmeira's complaint of sex, race, color and/or national origin discrimination.

133.    The Corporate Defendant engaged in unlawful discriminatory practices in violation of the NYHRL § 296 (6) by aiding, abetting, inciting, compelling and coercing the above retaliatory conduct.

134.   As a direct and proximate result of the retaliatory conduct complained of herein, Palmeira suffered and continue to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering and interest thereon.

135.   Palmeira is also entitled to an award of punitive damages, attorney's fees, and costs because Corporate Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of New York Human Rights Law.

## NINTH CLAIM FOR RELIEF
### Retaliation Under the New York City Human Rights Law Against the Corporate Defendant

136.   Palmeira repeats and realleges each and every allegation previously set forth.

137.   The Corporate Defendant retaliated against Palmeira by, inter alia, (i) subjecting Palmeira to materially adverse actions that would deter a reasonable employee from engaging in protected activity for his opposition to, and complaint against, the Corporate Defendant's discriminatory practices; (ii) failing to stop and prevent the discriminatory conduct towards Palmeira by employees of the Corporate Defendant; and (iii) conducting a bogus investigation and terminating Palmeira's employment after he made his protected complaints to the HR. Such retaliation was inflicted subsequent to, and in direct connection with, Palmeira's complaint of sex, race, color and/or national origin discrimination.

138.   The Corporate Defendant engaged in unlawful discriminatory practices in violation of the NYCHRL § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above retaliatory conduct.

139.   As a direct and proximate result of the retaliatory conduct complained of herein, Palmeira suffered and continue to suffer damages, including but not limited to lost

income, mental anguish, and pain and suffering and interest thereon.

140.    Palmeira is also entitled to an award of punitive damages, attorney's fees, and costs

because the Corporate Defendant's unlawful and retaliatory actions constitute

malicious, willful and wanton violations of NYCHRL.

## TENTH CLAIM FOR RELIEF
### Violation of NYLL §740 Against the Corporate Defendant

141.    Palmeira repeats and realleges each and every allegation previously set forth.

142.    Palmeira was fully qualified to be an Airport Service Duty Officer of the Corporate

Defendant.

143.    New York Labor Law §740 prohibits all employers from discharging, suspending,

demoting, or otherwise retaliating against an employee because the employee, among

other independent actions, discloses to a supervisor or to a public body an unlawful

activity, policy or practice of the employer that creates and presents a substantial and

specific danger to the public safety or objects to or refuses to participate in any such

activity, policy or practice in violation of a law, rule or regulation.

144.    Palmeira reported to the Corporate Defendant numerous incidents that affected

operations at JFK Airport and compromised public safety.

145.    Palmeira suffered an adverse employment action when he was terminated from his

employment as an Airport Service Duty Officer.

146.    The Corporate Defendant is liable for said retaliation against Palmeira because it

was created and fostered by its management.

147.    The retaliation against Palmeira by the Corporate Defendant was a result of

intentional actions by the Corporate Defendant's management and/or deliberate

indifference by the Corporate Defendant.

148.   As a direct and proximate result of said retaliation, Palmeira suffered and continues to suffer actual damages, in various forms including without limitation back wages, future wages.

149.   Palmeira is also entitled to an award of punitive damages, attorney's fees, and costs because the Corporate Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of NYLL.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs demand a trial by jury and judgment against all Defendants as follows:

A.   A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B.   An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all monetary and/or economic damages;

C.   An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including, but not limited to, compensation for their mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

D.   An award of damages to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

E.   An award of punitive damages;

F.   An award of liquidated damages;

G.   An award of costs and disbursements that Plaintiff has incurred in this action, as well as

[no more text on this page]

Plaintiff's attorneys' fees to the fullest extent permitted by law;

H.  Plaintiff's reinstatement to his position at the Corporate Defendant; and

I.  Together with such other and further relief that the Court deems just and proper.

Dated: New York, New York
          February 5, 2024

ROBERT WISNIEWSKI P.C.

By: */s/Robert Wisniewski*
      Robert Wisniewski
      *Attorneys for Plaintiffs*
      17 State Street, Suite 820
      New York, NY 10005
      Tel.: (212) 267-2101
      Email: rw@rwapc.com